IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

JOEL DAVID SHIFFLER, M.D.,

      Petitioner,

v.                                        Case No. 6:09-cv-00801

WEST VIRGINIA BOARD OF MEDICINE,

      Respondent.


## PROPOSED FINDINGS AND RECOMMENDATION

This action for declaratory judgment filed by Joel David
Shiffler, M.D., who is pro se, complains about actions taken by the
West Virginia Board of Medicine (the "Board") related to his
license to practice medicine.  Plaintiff[1] refers to federal
statutory and Constitutional provisions in his Complaint and
asserts that in its disciplinary proceedings against him, the Board
should have handled differently his failure to locate a physician
willing to serve as a preceptor.  As explained further below, the
undersigned recommends that the presiding District Judge dismiss
Plaintiff's Complaint because it fails to state a claim upon which
relief can be granted and, even if the Complaint did state a claim
such that this Court could exercise jurisdiction, the presiding
District Judge should abstain pursuant to Younger v. Harris, 401

---

[1]  The style of the case refers to Dr. Shiffler and the Board as
Petitioner and Respondent.  Because this action purports to be a declaratory
judgment action, the undersigned will refer to the parties as Plaintiff and
Defendant or Board, respectively.

U.S. 37 (1971).

This civil action is assigned to the Honorable Joseph R. Goodwin, Chief Judge of the United States District Court for the Southern District of West Virginia, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).  Currently pending before the Court is Defendant's Motion to Dismiss, filed July 30, 2009.  (Docket # 4.) Plaintiff has responded (# 7), and Defendant has replied (# 8), making the matter ripe for determination.

A.  <u>Allegations in the Complaint</u>.

On July 10, 2009, Plaintiff filed this action for declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.  Plaintiff claims jurisdiction pursuant to 42 U.S.C. § 1985, 28 U.S.C. § 1331 and 42 U.S.C. § 1983.  Plaintiff also makes reference to the Fifth and Fourteenth Amendments to the United States Constitution.  (# 1, pp. 1-2.)

Plaintiff alleges that on January 10, 2000, he was issued a license to Practice Medicine and Surgery in the State of West Virginia, license number 20094.  Plaintiff alleges that he "is subject to" the Board, pursuant to the West Virginia Medical Practice Act (the "Act").  (# 1, p. 3.)

Plaintiff alleges that on May 22, 2007, he "entered and consented to a Consent Order which imposed certain duties and

responsibilities" upon him.  (# 1, p. 4.)   On February 14, 2008, Plaintiff entered into an Amended Consent Order.   (# 1, p. 5.) Plaintiff attaches the Consent Order and Amended Consent Order to his Complaint.  (# 1-2, pp. 1-10; # 1-3, pp. 1-8.)

Plaintiff alleges that prior to signing the Amended Consent Order, he diligently sought an approved agency to certify to the Board that he completed an Educational Intervention Plan through the Center for Personalized Education for Physicians ("CPEP") and is diligently seeking to comply with the Amended Consent Order. (# 1, p. 5.)  Plaintiff alleges that the Board "does not have nor does it know of an agency previously approved by the Board which will or could certify to the Board that [Plaintiff] completed an <u>Educational Intervention</u> course of study by an approved Preceptor to certify the Board of [Plaintiff's] completion." (# 1, pp. 5-6.)

Plaintiff alleges that the following issues are "in controversy":

> 1.   The Board ... should have an approved list of Certified Preceptors from which [Plaintiff] could make a choice or choose from.
> 2. [Plaintiff] should not be required to choose from a non existent list of Preceptors not approved by the [Board].
> 3.  So long as [Plaintiff] is exercising due diligence, the Order of May 22, 2007 and February 14, 2008 should be and remain stayed and [Plaintiff'] license to practice medicine and surgery in the State of West Virginia should be authorized.
> 4.  That the [Board] be enjoined until [Plaintiff] can comply with the First Consent Order and until the details of the Second Consent Order can be complied with.

(# 1, p. 6.)

Plaintiff demands a jury trial and asks that the Court retain jurisdiction for the purpose of issuing a declaratory judgment, that the Court exercise its plenary powers over the Board so that Plaintiff's rights are free and clear and "not in violation of the Due Process Clause of the Fifth Amendment and the Privileges and Immunities [C]lause of the [Fourteenth] Amendment to the United States Constitution," and that the Court allow Plaintiff to proceed with this action under 42 U.S.C. § 1983.  (# 1, pp. 6-7.)

B.  Factual Background.

Briefly, the Board and Plaintiff entered into two consent orders in 2007 and 2008, and ultimately, after the filing of this action on July 10, 2009, Plaintiff's license was revoked on July 13, 2009.  The undersigned will summarize these events below.

1.  Consent Order entered May 22, 2007.

On May 22, 2007, Plaintiff and the Board entered into a Consent Order pursuant to West Virginia Code § 30-3-14, et seq. The Consent Order states that at the time, Plaintiff held a license to practice medicine and surgery in West Virginia and that beginning in December of 2005, the Board received a complaint from a caretaker of one of Plaintiff's patients.  The complaint committee of the Board conducted an investigation and identified several potential violations of the West Virginia Medical Practice Act and Rules of the Board, including that Plaintiff prescribed controlled substances to himself on several occasions between April

4

2004 and October 2005. (# 1-2, p. 2.) Thereafter, a second complaint was received from a patient, and Plaintiff eventually appeared before the Board. (# 1-2, pp. 2-3.) The Board referred Plaintiff for a mental and physical examination. (# 1-2, p. 4.) The Board concluded that probable cause existed to substantiate charges against Plaintiff pursuant to West Virginia Code § 30-3-14(c)(17), 11 CSR 1A 12.1(e)(j),(w) and (x) and 11 CSR 1A 12.2(a)(C) and 12.2(d), relating to unprofessional conduct, prescribing controlled substances for his own medical condition and for failing to confirm to the principles of the American Medical Association ("AMA"). (# 1-2, p. 5.)

The Board suspended Plaintiff's license for eighteen months, immediately stayed the suspension and permitted Plaintiff to practice medicine without restriction, pending his compliance with the terms and conditions set forth in the Consent Order. (# 1-2, p. 7.) The Consent Order required Plaintiff to (1) attend the CPEP program within six months of entry of the Consent Order; (2) meet with the Board to discuss the CPEP assessment report; and (3) to continue to receive regular treatment and monitoring by a Board approved mental health practitioner. After meeting with the Board regarding the CPEP assessment report, the complaint committee of the Board could recommend additional conditions, accommodations, limitations or restrictions, which it deemed necessary to ensure Plaintiff remained fully capable of practicing medicine and surgery

in the State of West Virginia.  If Plaintiff agreed to comply with the complaint committee's recommendations, the complaint committee could recommend that the Board dissolve the suspension.  (# 1-2, p. 7.)

If, at the end of one year following entry of the Consent Order, the complaint committee determined that Plaintiff had not made a good faith effort to comply with the terms and conditions of the Consent Order, the complaint committee could recommend that the Board revoke Plaintiff's license without further hearing or process.  (# 1-2, pp. 8-9.)  Finally, the Consent Order publically reprimanded Plaintiff for unprofessional conduct, prescribing controlled substances for his own medical condition and failing to conform to the principles of the AMA.  (# 1-2, p. 9.)

    2.  <u>CPEP Assessment Report dated September 6, 2007</u>.

On September 6, 2007, CPEP issued a final report in which the evaluators recommended that Plaintiff "retrain for a period of time in a residency or residency-like setting.  However, if the licensing board decided that it met local standards and was safe to allow Dr. Shiffler to retrain in a non-residency setting, he would require full supervision while updating his knowledge base."  (# 7-1, p. 45.)

    3.  <u>Amended Consent Order entered February 25, 2008</u>.

On February 25, 2008, Plaintiff and the Board entered into an Amended Consent Order, which superceded the prior Consent Order.

6

The Amended Consent Order states that the CPEP assessment revealed some deficiencies and recommended that Plaintiff undergo the CPEP Educational Intervention Plan, which includes a program of supervised education.  (# 1-3, p. 2.)  The Amended Consent Order states that "the Board has determined that the suspension of Dr. Shiffler's license should be extended for an additional period of six (6) months for a total of two (2) years, and the stay should remain in effect during this time, provided that certain additional conditions and limitations are placed upon Dr. Shiffler's license to practice medicine and surgery in the State of West Virginia." (# 1-3, p. 5.)  The Board extended the suspension of Plaintiff's license until May 22, 2009, immediately stayed the suspension and permitted Plaintiff to practice medicine without restriction, pending his compliance with the terms and conditions set forth in the Amended Consent Order.  (# 1-3, p. 6.)

The Amended Consent Order further required Plaintiff to arrange at his own expense, a supervised Educational Intervention Plan through CPEP within six months following entry of the Amended Consent Order.  (# 1-3, p. 6.)  Upon receipt of the CPEP Educational Intervention Plan concerning Plaintiff, the complaint committee could recommend appropriate additional conditions, accommodations, limitations or restrictions.  The stay of suspension referenced in the Amended Consent Order was to remain in effect for so long thereafter as the Plaintiff complied with the

terms of the Amended Consent Order, completed the CPEP Educational Intervention Plan and provided documentation of such completion to the Board.  (# 1-3, p. 6.)  Upon full compliance by Plaintiff of the CPEP Educational Intervention Plan, the complaint committee could recommend that the Board dissolve the suspension.  Plaintiff was required to continue regular treatment by a psychiatrist.  (# 1-3, p. 7.)  Finally, the Amended Consent Order states that if at the end of May 22, 2009, the complaint committee determined that Plaintiff had not made a good faith effort to comply with the terms of the Amended Consent Order, then the complaint committee could recommend that the Board revoke Plaintiff's license without further hearing or process.  (# 1-3, p. 7.)

    4.  <u>CPEP Educational Intervention</u>.

    Plaintiff participated in the CPEP Educational Intervention, and on July 31, 2008, CPEP provided a list of tasks to be completed within thirty days, including the identification of a preceptor candidate.  (# 7-1, pp. 61-62.)

    5.  <u>November 18, 2008, Letter from Robert C. Knittle</u>.

    On November 18, 2008, Robert C. Knittle wrote to Plaintiff on behalf of the Board and stated that following Plaintiff's appearance on November 9, 2008, before the complaint committee of the Board, the complaint committee discussed their "deep concern about your failure to have started on your Board approved CPEP Educational Plan.  The Complaint Committee understands that you

have tried to obtain a preceptor and have not succeeded, but simply stated, this is not good enough." (# 7-2, p. 1.)  The complaint committee indicated its belief that Plaintiff was in violation of the Amended Consent Order, but that the committee wanted to give Plaintiff one more chance instead of immediately lifting the stay. As a result, Mr. Knittle requested that Plaintiff sign the enclosed Second Amended Consent Order by December 1, 2008.  (# 7-2, p. 1.) The Second Amended Consent Order required that by January 9, 2009, Plaintiff must document in writing to the Board that he had located a preceptor and was in full compliance with the CPEP Educational Plan or that he had not found a preceptor to perform the requirements of the CPEP Educational Plan.  (# 7-2, p. 9.)  In addition, the Second Amended Consent Order required Plaintiff to remain in full compliance with the CPEP Educational Plan until it was fully and successfully completed and to continue regular treatment and monitoring by a psychiatrist.  (# 7-2, p. 9.)  If Plaintiff failed to comply with the above requirements, the complaint committee of the Board reserved the right to recommend that the Board lift the stay of revocation without further hearing or process.  (# 7-2, p. 8.)

      6.  <u>CPEP Progress Report dated January 6, 2009</u>.

      By letter dated January 6, 2009, CPEP indicated that Plaintiff had been searching for a preceptor, but had been unsuccessful to date.  Plaintiff had also requested CPEP's assistance in finding a

9

preceptor, and CPEP indicated it had initiated a search as well, but had not yet identified a candidate.  (# 7-2, p. 12.)

    7.  <u>Efforts to Obtain a Preceptor</u>.

    In his response, Plaintiff attaches correspondence from his then counsel, physicians and others indicating his attempts to secure a preceptor.  (# 7-2, pp. 19-27.)

    8.  <u>January 14, 2009, Letter from Deborah L. Rodecker</u>.

    On January 14, 2009, Deborah L. Rodecker, counsel for the Board, wrote to Plaintiff's then counsel and stated that at the complaint committee's recent meeting, the committee acknowledged Plaintiff's increased efforts to find a preceptor, but that there remained "considerable deficiencies, and the Complaint Committee determined that regardless of all his continuing efforts (which it strongly encourages), without a preceptor in place it is not safe for the public for Dr. Shiffler to continue to practice medicine. The Committee noted that he declined to sign the [Second Amended] Consent Order ...."  (# 7-2, p. 35.)  Ms. Rodecker indicated that the complaint committee had decided that the enclosed Second Amended Consent Order was its last offer to Plaintiff, and that Plaintiff must sign and notarize it by Friday, January 30, 2009. (# 7-2, p. 35.)

    9.  <u>April 23, 2009, Letter from Mr. Knittle</u>.

    On April 23, 2009, in a letter to Plaintiff's then counsel, Mr. Knittle acknowledged counsel's letter indicating that Kalapala

S. Rao, M.D. would serve as the CPEP preceptor for Plaintiff, but that Plaintiff must submit a replacement for Dr. Rao as his treating physician.  Also, Mr. Knittle indicated the Board would need immediate notification of CPEP's acceptance or denial of Dr. Rao.  (# 7-2, p. 46.)

    10.  <u>July 10, 2009, Filing in Federal Court</u>.

    On July 10, 2009, Plaintiff filed the above-referenced Complaint in federal court.

    11.  <u>July 13, 2009, Notice of Revocation</u>.

    On July 13, 2009, the Board entered a Notice of Revocation of Plaintiff's license.  The Notice states that

> [o]n May 19, 2009, three (3) days prior to the expiration of the Amended Consent Order, Counsel for Dr. Shiffler notified the Board that CPEP had agreed to accept Dr. K.S. Rao as the preceptor. By that time, however, there was no longer enough time to complete the CPEP plan prior to May 22, 2009.  The Board, out of an abundance of patience and fairness, offered to allow Dr. Shiffler to enter into a Second Amended Consent Order to allow enough time to complete the preceptor oversight portion of the Education Plan.

(# 7-2, p. 49) (footnote omitted).  In a footnote, the Board's Notice of Revocation indicated that the Second Amended Consent Order offered in May of 2009 was a separate and distinct Order from that offered in January of 2009.  (# 7-2, p. 49 n.1.)  The new Second Amended Consent Order, which Plaintiff agreed to enter into, would begin on May 23, 2009, and end on May 23, 2010, in order to allow Plaintiff time to complete the CPEP remedial education. After many phone and e-mail communications with Plaintiff's then

counsel, the Board was notified on July 8, 2009, that the preceptor had withdrawn.  (# 7-2, p. 50.)

At the Board's regular meeting on July 13, 2009, with a quorum of the Board present, the Board voted to revoke Plaintiff's license, noting that the preceptor component of Plaintiff's remedial reeducation plan was a vital and essential component of the plan and that Plaintiff's noncompliance with this component is fatal to his accomplishment of the plan.  (# 7-2, p. 50.)  The Board concluded that Plaintiff had not made a good faith effort to comply with the terms of the Amended Consent Order.  (# 7-2, p. 50.)

12.  <u>State Court Action</u>.

On July 23, 2009, Plaintiff, by counsel, filed a Petition for Review in the Circuit Court of Kanawha County, civil action number 09-AA-127, seeking review of the Notice of Revocation entered by the Board on the grounds that (1) the Amended Consent Order on which the Board relied in revoking Plaintiff's license had expired on May 22, 2009; (2) Plaintiff had no control over Dr. Rao's decision not to serve as preceptor and was not in violation of any consent order; and (3) the Board's decision to revoke Plaintiff's license when it lacked authority to do so was retaliation for filing the instant action in federal court.  (Court's Exhibit 1, pp. 1-12.)

On July 27, 2009, Judge James C. Stucky denied Plaintiff's

motion for a stay and determined that a hearing was not necessary. (# 7-2, p. 53.)

By order entered December 29, 2009, Judge Stucky affirmed the decision of the Board to revoke Plaintiff's license.  (Court's Exhibit 2.)

On January 7, 2010, Judge Stucky entered an amended order[2] again affirming the decision of the Board to revoke Plaintiff's license.  (Court's Exhibit 3.)  Judge Stucky found that the Plaintiff's arguments that the "Amended Consent Order had expired and that the Board acted in retaliation because he had filed a lawsuit are both without merit." (Court's Exhibit 3, p. 4.)

C.   Arguments of the Parties.

1.   Defendant's Motion.

Defendant moves that the Court dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  Defendant also seeks an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988(b).  (# 4, pp. 1-3.)

Defendant first argues that Plaintiff's stated issue in the Complaint relates solely to an agreement he made with the Board, a State agency.  Defendant contends that Plaintiff wants this Court

---

[2]   The only difference between the original Order and the Amended Order is the title of the order.

to stay the Consent Order and Amended Consent Order, but since the entry of these orders and on July 13, 2009, the Board revoked Dr. Shiffler's license.  As a result, no stay of the consent orders is possible since they have been succeeded by the Notice of Revocation issued on July 13, 2009.  (# 5, p. 1.)

Defendant next contends that medical discipline is regulated exclusively at the State level and in West Virginia, by the Board pursuant to West Virginia Code § 30-3-1.  (# 5, p. 2.)

Third, Defendant argues that while Plaintiff invokes 42 U.S.C. § 1985, the action alleges no conspiracy under 42 U.S.C. § 1985. Defendant contends that Plaintiff has not alleged that two persons have prevented the performance of official duties, obstructed justice, intimidated a party, witness or juror or deprived persons of rights or privileges.  As a result, Defendant asserts that the Court lacks subject matter jurisdiction.  (# 5, p. 2.)

Fourth and fifth, Defendant likewise argues that while Plaintiff invokes 42 U.S.C. § 1983 and 28 U.S.C. § 1343, the action alleges no violation of these statutes.  Defendant argues that on its face, Plaintiff's action for declaratory judgment does not reveal a violation of either statute.  Hence, Defendant asserts that the Court lacks subject matter jurisdiction.  (# 5, pp. 2-3.)

Sixth, Defendant argues that on its face, Plaintiff's declaratory judgment action does not state a cause of action arising under the Constitution, laws or treaties of the United

14

States.  (# 5, p. 4.)

Seventh, Defendant asserts that there is no actual controversy within the jurisdiction of the Court so as to permit a declaratory judgment under 28 U.S.C. § 2201.  (# 5, pp. 4-5.)  Because Plaintiff's license has since been revoked, Defendant contends that the Court lacks subject matter jurisdiction.  (# 5, p. 5.)

Eighth, Defendant argues that the Plaintiff does not have standing to bring this action because he seeks damages but alleges no injury in fact.  (# 5, p. 5.)

Ninth, Defendant avers that the Declaratory Judgment Act, 28 U.S.C. § 2201, provides the Court with discretionary jurisdiction, which should not be exercised in this action.  (# 5, pp. 5-6.)

Tenth, Defendant contends that the Court should abstain and not exercise its federal judicial power.  Defendant points out that licensing and discipline are handled exclusively by the states, that West Virginia has a legitimate and substantial interest in prescribing reasonable qualification for professions which require special skill and knowledge and intimately affect public health, welfare and safety.  Plaintiff may contest the Board's actions in State court and raise constitutional issues if he chooses.  Finally, Defendant argues that there are no extraordinary circumstances existing that make abstention inappropriate.  (# 5, p. 6.)

Eleventh, Defendant argues that the action fails to state a

claim for which declaratory judgment may be granted because it is unclear what Plaintiff wants the Court to declare. (# 5, p. 7.)

Twelfth, Defendant argues that the Plaintiff improperly requests that the Court stay an action of a State agency to which Plaintiff has agreed. In addition, Defendant points out that the action he seeks to stay has been superseded by the revocation of his license by a State agency. (# 5, p. 8.)

Next, Defendant asserts that a jury trial is not appropriate because Plaintiff's action does not involve a private right. (# 5, p. 8.)

Finally, Defendant seeks an award of reasonable attorney's fees under 42 U.S.C. § 1988(b), which provides that if a party brings an action to enforce provisions of 42 U.S.C. § 1983 and § 1985, the prevailing party may be awarded attorney's fees. (# 5, p. 9.)

2. Plaintiff's Response.

In his response, Plaintiff relates the difficulties he encountered in finding a preceptor and notes that the Board offered a proposed second amended consent order, which would have imposed even more restrictions. Plaintiff did not accept the proposed second amended consent order. (# 7, pp. 7-8.)

Plaintiff states that on July 13, 2009, the Defendant allegedly met at a regular meeting and agreed to revoke the Plaintiff's license to practice medicine and surgery. Plaintiff

16

asserts that he had no hearing before the revocation.  (# 7, p. 3.) Plaintiff asserts that his license was revoked in violation of the Board's amended consent order.  (# 7, p. 4.)  Plaintiff alleges that the Board's decision to revoke his license, "when it lacked the authority to do so, was retaliation for filing his federal lawsuit."  (# 7, p. 4.)[3]

In response to the various arguments raised by Defendant, Plaintiff argues that claims for prospective relief to compel a state agency to comply with federal laws are within the doctrine of Ex Parte Young, 209 U.S. 123 (1908), and may be asserted against an appropriate State official in his or her official capacity.  (# 7, p. 10.)

Plaintiff asserts that he need not exhaust State judicial remedies in order to assert a § 1983 claim.  (# 7, p. 11.)

Plaintiff concedes that medical discipline is regulated exclusively at the State level by the Board, but that he still has federally protected rights under § 1983.  (# 7, p. 12.)  As to Defendant's argument that he failed to allege a § 1983 violation, Plaintiff states that he has a right to be free from violations by State agency officials who act under color of State law in violation of his protected rights as guaranteed by the Fifth Amendment.  Plaintiff again states that he "has been [retaliated]

---

[3]   Plaintiff has not alleged retaliation in his Complaint, nor has he sought to amend the Complaint.

17

against by [Defendant]."  (# 7, p. 13.)

Regarding abstention, Plaintiff points out that there are exceptions where a plaintiff demonstrates that a state prosecution is undertaken in bad faith, to retaliate against a party or to chill the exercise of a constitutionally protected right. Plaintiff asserts that the reason the Board revoked his license was to retaliate and to chill his protected rights.  (# 7, p. 17.)

Plaintiff asserts that there is a case and controversy even though he has the option to appeal to a higher State court because "the issue is capable of repetition, yet evading review." (# 7, p. 17A.)

Regarding 42 U.S.C. § 1985, Plaintiff states that in the event discovery reveals violations of § 1985, "he intends to bring said matter to the attention of this court."  (# 7, p. 12.)

3.  <u>Defendant's Reply</u>.

In reply, Defendant asserts that Plaintiff's filing of the State court action buttresses its argument that this Court should abstain.  (# 8, p. 1.)   In addition, Defendant asserts that Plaintiff's allegation that the Board revoked Plaintiff's license in retaliation for filing the instant action is unsupported. (# 8, p. 3.)

D.  <u>Standard of Review</u>.

At the outset, the Court notes that because Plaintiff is <u>pro se</u>, the Court "is obliged to construe his pleadings liberally and

18

search for any 'set of facts in support of his claim which would entitle [him] to relief.'" Materson v. Stokes, 166 F.R.D. 368, 372 (E.D. Va. 1996) (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972)).  Nevertheless, as the party asserting jurisdiction, the burden of proving subject matter jurisdiction lies with Plaintiff. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

Defendant has filed its motion to dismiss based on failure to state a claim and lack of subject matter jurisdiction, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Regarding a motion filed pursuant to Rule 12(b)(1), based on lack of subject matter jurisdiction, the United States Court of Appeals for the Fourth Circuit explained that

> [t]here are two critically different ways in which to present a motion to dismiss for lack of subject matter jurisdiction. First, it may be contended that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based.  In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he [or she] would receive under a Rule 12(b)(6) consideration. Second, it may be contended that the jurisdictional allegations of the complaint were not true. A trial court may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations.

Adams, 697 F.2d at 1219 (4th Cir. 1982) (footnote omitted).

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for

failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Id. at 555.

The Supreme Court further explained its holding in Twombly in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

>    Two working principles underlie our decision in
> Twombley.  First, the tenet that a court must accept as
> true all of the allegations contained in a complaint is
> inapplicable to legal conclusions.  Threadbare recitals
> of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice. [Twombley, 550
> U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes
> of a motion to dismiss we must take all of the factual
> allegations in the complaint as true, we "are not bound
> to accept as true a legal conclusion couched as a factual
> allegation" (internal quotation marks omitted)).  Rule 8
> . . . does not unlock the doors of discovery for a
> plaintiff armed with nothing more than conclusions.
> Second, only a complaint that states a plausible claim
> for relief survives a motion to dismiss.  Id., at 556,
> 127 S.Ct. 1955.
>                          * * *
>
>    In keeping with these principles a court considering
> a motion to dismiss can choose to begin by identifying
> pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief.
Id. at 1949-50; see also Francis v. Giacomelli, 588 F.3d 186, 193-94 (4th Cir. 2009) (applying Twombly and Iqbal).

Where the court relies upon information outside of the pleadings a motion to dismiss should be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.   See Jeffers v. Wal-Mart Stores, Inc., 84 F. Supp.2d 775, 777 (S.D. W. Va. 2000).

E.   Analysis.

   1.   Failure to State a Claim.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint fails to state a claim upon which relief can be granted and, as a result, must be dismissed pursuant to Rule 12(b)(6).

On its face, Plaintiff's Complaint simply does not state a claim upon which relief can be granted.   Plaintiff mentions 42 U.S.C. § 1985 in his Complaint, but does not state how Defendant violated § 1985.   Plaintiff later states in his response that in the event discovery reveals violations of § 1985, "he intends to bring said matter to the attention of this court."   (# 7, p. 12.) Plaintiff essentially concedes that at present, he has no basis for a § 1985 claim.

While Plaintiff invokes 28 U.S.C. § 1983, the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of

the Fourteenth Amendment as bases for jurisdiction in this matter and states that he believes the Board is under a continuing duty to apply the law equally and in compliance with these provisions (# 1, p. 4.), Plaintiff does not allege in concrete terms how the Board violated any of the above-referenced provisions.   Plaintiff's Complaint contains, at best "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ...." Twombley, 550 U.S. at 555.   In particular, while Plaintiff cites "issues in controversy," presumably over which he seeks a declaratory judgment, Plaintiff simply does not state what he wishes this Court to declare.

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge dismiss this action pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure for failure to state a claim upon which relief can be granted.

2.   <u>Younger Abstention</u>.

Reading Plaintiff's Complaint as liberally as possible, Plaintiff is complaining about a deprivation of his right to due process before the Board.   Plaintiff's Complaint could be read as seeking a declaratory judgment that the Board's requirements for finding a preceptor are flawed and that so long as Plaintiff is exercising due diligence in finding a preceptor and complying with the Amended Consent Order, the Amended Consent Order should remain in effect and Plaintiff should be permitted to practice medicine.

(# 1, p. 6.)

Assuming Plaintiff's Complaint does state a claim pursuant to 42 U.S.C. § 1983 for deprivation of his due process rights, thereby providing jurisdiction pursuant to 28 U.S.C. § 1331, the undersigned proposes that the presiding District Judge **FIND** that this Court should abstain from exercising subject matter jurisdiction over Plaintiff's action pursuant to the "Younger-abstention doctrine," as defined in Younger v. Harris, 401 U.S. 37 (1971).

"Under [the] Younger-abstention doctrine, interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 237-38 (1984). Younger and "its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982).

The Fourth Circuit has instituted a three-part test for determining when Younger abstention is appropriate: "(1) there is an ongoing state judicial proceeding, (2) the proceeding implicates important state interests, and (3) there is an adequate opportunity to present the federal claims in the state proceeding." Employers Resource Mgmt. Co., Inc. v. Shannon, 65 F.3d 1126, 1134 (4th Cir.

1995) (citing Middlesex, 457 U.S. at 432).

The action filed by Plaintiff in State court seeking review of the Board's revocation of his license is an "ongoing state judicial proceeding" for purposes of Younger.  On January 7, 2010, Judge Stucky upheld the Board's revocation of Plaintiff's license. Pursuant to Rule 3(a) of the West Virginia Rule of Appellate Procedure, Plaintiff must file any appeal within four months.  See W. Va. Code § 29A-6-1 ("Any party affected by the final judgment of the circuit court under this chapter [of the Administrative Procedures Act] may seek review thereof by appeal to the Supreme Court of Appeals of this State ... within the time provided by law for civil appeals generally.").

Because the appeal time has not yet run on Judge Stucky's decision, the State action is ongoing for purposes of Younger. Indeed, "[w]ith respect to whether there is an ongoing state proceeding, it is settled that for purposes of Younger abstention, a proceeding is considered pending until all appellate court remedies have been exhausted." Levy v. Lerner, 853 F. Supp. 636, 641 (E.D. N.Y. 1994) (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 608 (1975)); Cf. Jews v. Tyler, Civil No. L-08-2075, 2009 WL 5206480, at *7 (D. Md. Jan. 16, 2009) (finding that plaintiff's appeal of a state administrative agency decision to the state circuit court is "best characterized as an administrative appeal that is one phase within an ongoing state administrative

proceeding.")

Judge Stucky's review of the decision of the Board revoking Plaintiff's license is judicial in nature.  See New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 370-71 (1989) (finding that the hallmark of a "judicial inquiry" is a proceeding that investigates, declares and enforces liabilities as they stand on present or past facts and under law supposed to exist).

Furthermore, where state proceedings are begun "'after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of [Younger] should apply in full force.'"  Renn v. Garrison, 845 F. Supp. 1127, 1129 (E.D. N.C. 1994) (quoting Hicks v. Miranda, 422 U.S. 322, 349 (1975)).  That is certainly the case in the instant matter, where the administrative action before the Board had been ongoing for some time, and the State action was filed within two weeks of the filing of the federal action and there have been no substantive rulings in the instant federal action.  Id.

Next, the proceeding in State court implicates important state interests.  In Phillips v. Virginia Bd. of Med., 749 F. Supp. 715, 729 (E.D. Va. 1990), the court found that "[i]t is difficult to imagine a state interest more important than the protection of citizens against the harms of unethical or incompetent practitioners of healing arts."  See Hoover v. West Va. Dep't of Health and Human Resources, 984 F. Supp. 978, 979 (S.D. W. Va.

1997) (citing <u>Phillips</u> for the proposition that important state interests are implicated where West Virginia Board of Medicine undertook investigation of a physician accused of misconduct).

West Virginia Code § 30-3-1 <u>et</u> <u>seq</u>., known as the West Virginia Medical Practice Act (the "Act"), provides for licensure and professional discipline of physicians and describes the powers and duties of the Board.  <u>See</u> W. Va. Code § 30-3-7 (describing powers and duties of the board); W. Va. Code § 30-3-14 (describing grounds for professional discipline of physicians).  Notably, the legislative findings of the Act declare that "the practice of medicine and surgery ... is a privilege and not a natural right of individuals.  As a matter of public policy, it is necessary to protect the public interest through enactment of this article and to regulate the granting of such privileges and their use."  W. Va. Code § 30-3-1; <u>see</u> <u>Webb v. West Virginia Bd. of Med.</u>, 506 S.E.2d 830, 836 (W. Va. 1998) (Workman, J., concurring and dissenting) ("The Board's duty is to protect the general public from physicians who behave improperly or unethically toward their patients."). Furthermore, jurisdiction to review decisions by the Board, such as the Board's decisions related to Plaintiff, is appropriate in the Circuit Court of Kanawha County.  W. Va. Code § 29A-5-4(b).

Finally, Plaintiff has had an adequate opportunity to present the federal claims in the State proceeding.  Plaintiff must demonstrate that "state procedural law barred [the] presentation of

[his or her constitutional] claims." <u>Pennzoil Co. v. Texaco Inc.</u>, 481 U.S. 1, 14 (1987). "[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state proceedings will afford an adequate remedy, in the absence of unambiguous authority to the contrary." <u>Id.</u> at 15. Further, in <u>Pennzoil</u> the procedural posture in that case was such that judgment had been entered, a motion for new trial was denied and the appellee, Texaco, had appealed to the Texas Court of Appeals, which affirmed the trial court's judgment against Texaco, with some modification. In <u>Pennzoil</u>, the Court noted that Texaco, "never presented to the Texas courts the challenges it makes in this case ... under federal law." <u>Id.</u> at 7 n.5. The Court recognized that

> the trial court no longer had jurisdiction over the case ... [and] relief is no longer available to Texaco from the trial court. But Texaco cannot escape <u>Younger</u> abstention by failing to assert its state remedies in a timely manner. <u>See</u> <u>Huffman v. Pursue, Ltd.</u>, [420 U.S.] at 607-09.... In any event, the Texas Supreme Court and the Texas Court of Appeals arguably have the authority to suspend the supersedeas requirement to protect their appellate jurisdiction.

<u>Id.</u> at 16 n.16.

Pursuant to West Virginia Code § 29A-5-4(g), in reviewing a decision of the Board,

> (g) [t]he [Kanawha County Circuit Court] may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings,

27

inferences, conclusions, decision or order are:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of the agency; or
(3) Made upon unlawful procedures; or
(4) Affected by other error of law; or
(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Plaintiff's petition seeking review of the Board's decision, filed in Kanawha County Circuit Court, claims that the Board's decision to revoke his license when it lacked the authority to do so was arbitrary and capricious and was done in retaliation for the filing of his federal lawsuit. Though Plaintiff does not cite federal statutes or other provisions in his petition, Plaintiff's petition can be read as stating a claim of deprivation of his right to due process. In short, constitutional claims can be brought in an administrative appeal to circuit court pursuant to West Virginia Code § 29A-5-4(a), and Plaintiff's petition before the Kanawha County Circuit Court could have raised and indeed, arguably did raise such claims insofar as Plaintiff complained about the Board's failure to follow its own orders and its alleged retaliation for Plaintiff's filing of the instant action.

Even if Plaintiff's petition in State court is construed as not raising any federal constitutional claim, as the Court in Pennzoil and Huffman has indicated, a party "cannot escape Younger abstention by failing to assert its state remedies in a timely

manner." <u>Pennzoil</u>, 481 U.S. at 16 n.16; <u>Huffman</u>, 420 U.S. at 607-09.

There are exceptions to <u>Younger</u>.  A showing of bad faith or harassment by state officials for the prosecution or a finding that the state law to be applied is flagrantly and patently violative of express constitutional prohibitions, or that other extraordinary circumstances exist that present a threat of immediate and irreparable injury can avoid <u>Younger's</u> mandate to abstain.  <u>Nivens v. Gilchrist</u>, 444 F.3d 237, 241 (4th Cir. 2006).  There is no indication that any of these exceptions apply.  As such, principles of federalism and comity demand application of <u>Younger</u> abstention.

Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge abstain from exercising jurisdiction over this matter pursuant to <u>Younger v. Harris</u>, 401 U.S. 37 (1971).

F.  <u>Recommendation</u>.

It is respectfully **RECOMMENDED** that the presiding District Judge **GRANT IN PART** the Defendant's Motion to Dismiss (# 4) based on Rule 12(b)(6) of the Federal Rules of Civil Procedure and <u>Younger</u> and **DENY** Defendant's Motion with respect to the request for attorney's fees, all with prejudice, and dismiss this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections), and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation, within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Chief Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation, to transmit a copy to counsel for the Defendant and to mail a copy to the Plaintiff.

January 29, 2010
        Date

                          Mary E. Stanley
                          Mary E. Stanley
                          United States Magistrate Judge

30